NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

**FILED**

NOV 1 7 2003

No. 01-4180

LEONARD GREEN, Clerk

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Sixth Circuit Rule 28(g) limits citation to specific situations. Please see Rule 28(g) before citing in a proceeding in a court in the Sixth Circuit. If cited, a copy must be served on other parties and the Court.

This notice is to be prominently displayed if this decision is reproduced.

UNITED STATES OF AMERICA )
)
Plaintiff-Appellee, )
)
v. )
) ON APPEAL FROM THE UNITED
SHEILA NEUHAUSSER ) STATES DISTRICT COURT FOR THE
) SOUTHERN DISTRICT OF OHIO
)
Defendant-Appellant. )

**Before: SUHRHEINRICH, COLE, and ROGERS, Circuit Judges.**

**ROGERS, Circuit Judge.** Sheila Neuhausser, having been convicted of conspiracy to distribute marijuana and cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1), appeals the district court's denial of her motion filed under 18 U.S.C. § 2255 to vacate, set aside, or correct sentence. The district court properly determined, *inter alia*, that Neuhausser's trial counsel was not ineffective, either because of a purported conflict of interest or otherwise, and that Neuhausser was not denied due process by the admission of certain evidence. We therefore affirm the decision of the district court in all respects.

*No. 01-4180*
*United States v. Neuhausser*

*I. Background*

Neuhausser was indicted with her then ex-husband Randall Neuhasser ("Randy" or collectively with Neuhausser, the "Neuhaussers") on April 16, 1998, along with four other individuals, as co-conspirators in a drug trafficking enterprise involving marijuana and cocaine.[1] The indictment also charged Neuhausser with traveling in interstate commerce in furtherance of an unlawful activity, the distribution of a controlled substance. Each of the indicted individuals, except Neuhausser and Randy, ultimately entered a guilty plea and agreed to testify against the Neuhaussers.

The Neuhaussers were tried together before a jury. For the trial, Randy was represented by attorney Merlyn Shiverdecker, and Neuhausser was represented by attorney Philip E. Pitzer. At trial, the Government presented evidence regarding two drug trafficking ventures. First, witnesses testified as to trips to California to obtain marijuana for subsequent sale by Randy and a co-defendant, Doug Burgess. The testimony indicated that the marijuana was brought to the Neuhaussers' residence at 2249 Bone Road, Lebanon, Ohio.[2] One trip to California ended unsuccessfully on September 1, 1997, when co-defendant Scott Meyers was arrested by state troopers in Nebraska as he returned from California. The Nebraska state troopers recovered 123.5 pounds

---

[1] Much of this section is taken from this court's opinion in *United States v. Neuhausser*, 241 F.3d 460 (6th Cir.), *cert. denied*, 534 U.S. 879 (2001).

[2] Despite the fact that the Neuhassers were divorced on November 19, 1997, Neuhausser continued to live at the Bone Road residence through the period encompassed by the indictment. In addition, beginning in 1993, and continuing through her indictment, Neuhausser was employed by Consolidated Properties, a business that Randy owned and that was operated out of the Bone Road residence.

*No. 01-4180*
*United States v. Neuhausser*

of marijuana from a white Ford Taurus, and a check of the car's Ohio license plate revealed that it was registered to Burgess. Keith Johnson, a used car salesman, testified that this vehicle actually had been purchased by Randy, who asked that the car be placed in Burgess's name.

Next, the Government presented evidence that Randy's pickup truck was used to transport cocaine from Florida. One witness, co-conspirator James McCarty, testified that for a period of time, he was purchasing one to two kilos of cocaine per month from Neuhausser. McCarty testified that Randy told him that the cocaine was from Florida and that Randy smuggled the cocaine in the tailgate of the truck. J.A. at 206-08. A DEA agent who executed a search warrant at the Bone Road property in March of 1998 testified that the pickup truck was seized as evidence during the search and that a subsequent swab of the inside of the tailgate tested positive for the presence of cocaine.[3]

The testimony of Burgess and, to a lesser extent, McCarthy linked Neuhausser to the conspiracy. Burress testified that Neuhausser was present during certain conversations and events, including: (1) a January 1997 meeting at which Doug Burgess and Randall Neuhausser discussed an upcoming trip to California to obtain marijuana, J.A. at 402-03; (2) various other conversations between Burgess and Randy regarding the marijuana venture, J.A. at 436; (3) various times when Burgess would pay money to Randy for marijuana at the Bone Road residence, J.A. at 403; and (4) certain occasions when Burgess returned from California with marijuana and delivered it to the Bone Road residence, J.A. at 405, 414, 425.

---

[3] The truck was registered in Neuhausser's name. J.A. at 806.

*No. 01-4180*
*United States v. Neuhausser*

There was also testimony that Neuhausser actively participated in the conspiracy. McCarthy testified that there were times that Randy was not at home to accept drug payments, and Neuhausser accepted payments on Randy's behalf. J.A. at 204-05. Similarly, Burgess testified that on two occasions in 1997, Randy was not at home to accept money from Burgess, and Neuhausser accepted these payments on Randy's behalf. J.A. at 431-36. Burgess also related that in late 1994 or early 1995 the Neuhaussers made Burgess, at gun point,[4] strip naked in front of them to prove that he was not wearing a recording device. J.A. at 451-53. One of Randy's friends had been arrested six months to one year before the incident, leading the Neuhaussers to fear that Burgess might be an informant. J.A. at 450-52. Burgess testified that during the search, Neuhausser pointed a gun at him. J.A. at 502-03.

Later in the trial, Neuhausser's attorney, Pitzer, attempted to introduce testimony from three witnesses, each of whom would have testified as to prior statements that Burgess made that were inconsistent with Burgess's testimony that Neuhausser was present during the "strip search" incident. J.A. at 889-891. The trial court did not allow this testimony because counsel failed to ask Burgess about the prior inconsistent statements when Burgess had been questioned earlier in the trial, as required for the introduction of prior inconsistent statements under Federal Rule of Evidence 613. *Id.* Despite this setback, Pitzer did impeach Burgess's testimony by a number of other methods.

---

[4] On searching the Bone Road residence, DEA agents found a handgun that had been purchased by Neuhausser. J.A. at 602-04.

*No. 01-4180*
*United States v. Neuhausser*

With regard to the Travel Act count, the Government presented guest registration records from a hotel in Fort Lauderdale, Florida, that showed that Neuhausser had checked in on August 6, 1997, and departed on August 10, 1997. J.A. at 615-18, 649-52. These hotel records also reflect that Neuhausser was traveling in a Ford Taurus with Ohio license plates. J.A. at 650-51.

On October 7, 1998, the jury returned guilty verdicts against both Randy and Neuhausser on the drug conspiracy charge, and a guilty verdict against Neuhausser on the Travel Act charge. Neuhausser retained new counsel, Thomas Miller, for post-trial motions and sentencing. After the Neuhaussers were unsuccessful in post-trial motions, Randy appealed his sentence, and Neuhausser appealed her sentences and convictions. On appeal, Randy was represented by Philip Pitzer, Neuhausser's trial counsel, while Neuhausser was represented by new counsel, Clayton Napier. This court affirmed both Randy's sentence and Neuhausser's sentence, and also affirmed Neuhausser's conspiracy conviction. *See Neuhausser*, 241 F.3d at 475. The court, however, declined to consider Neuhausser's ineffective assistance of counsel claims, and set aside Neuhausser's Travel Act conviction. *Id.* at 474-75

After Neuhausser's petition for certiorari was denied, she filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence, asserting a number of grounds for the requested relief. After an evidentiary hearing on Neuhausser's claims of ineffective assistance of counsel, the district court denied Neuhausser's motion and denied her request for a certificate of appealability. Neuhausser then requested a certificate of appealability from this court. On July 29, 2002, this court granted Neuhausser's request for a certificate of appealability with respect to three alleged errors:

*No. 01-4180*
*United States v. Neuhausser*

(1) whether Neuhausser's trial counsel rendered ineffective assistance of counsel because of a conflict of interest, (2) whether Neuhausser's trial counsel rendered ineffective assistance during the course of the trial, and (3) whether the trial court committed plain error by allowing the admission of evidence regarding Neuhausser's traveling to Florida as proof of an overt act in furtherance of the conspiracy.

*II. Standard of Review*

This court reviews *de novo* a district court's denial of a motion under § 2255, and reviews the factual findings upon which the denial is based for clear error. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

*III. Analysis*

*A. Ineffective Assistance of Counsel Claims*

Neuhausser claims that Pitzer was ineffective because he labored under a conflict of interest and because he failed to ask a witness the predicate questions necessary for the admission of impeachment evidence. Neuhausser has failed to demonstrate that Pitzer was constitutionally ineffective, as she has not shown that he had an actual conflict of interest that resulted in an adverse effect on his performance, and Pitzer otherwise impeached the witness in question.

Generally, to prevail on an ineffective assistance of counsel claim, a criminal defendant must demonstrate (1) that "counsel's representation fell below an objective standard of reasonableness,"

- 6 -

*No. 01-4180*
*United States v. Neuhausser*

and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984). There are, however, instances in which prejudice from counsel's errors is presumed, *see id.* at 692; *United States v. Cronic*, 466 U.S. 648, 658 (1984), including when the defendant demonstrates that the defendant's attorney actively represented conflicting interests. *Mickens v. Taylor*, 535 U.S. 162, 166 (2002). Where the defendant or his counsel objected to the conflict prior to, or during, the trial, a trial court's failure to correct an improper conflict renders a subsequent conviction subject to automatic reversal. *Holloway v. Arkansas*, 435 U.S. 475, 489-92 (1978). In the absence of an objection, however, prejudice against the defendant is presumed only if the defendant demonstrates that a conflict of interest "actually affected the adequacy of his representation." *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980); *Mickens v. Taylor*, 535 U.S. 162, 168-69 (2002). As we have interpreted *Sullivan* and *Mickens*, this requires a showing of (1) an actual conflict, and (2) an adverse effect on his counsel's performance. *Moss*, 323 F.3d at 463-70. The first element requires "only that the petitioner demonstrate a real or genuine, as opposed to a hypothetical, conflict of interest." *Id.* at 467 n.23. As to the second element, a defendant "must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir.1987); *see also Moss*, 323 F.3d at 465-66. Whether an actual conflict of interest exists upon the facts of a given case is a mixed question of fact and law that is reviewed *de novo*. *United States v. Hopkins*, 43 F.3d 1116, 1118 (6th Cir. 1995) (citing *Sullivan*, 446 U.S. at 342). In this case, Neuhausser has failed to meet the elements of the applicable test.

*No. 01-4180*
*United States v. Neuhausser*

In support of her contention that her trial counsel, Phillip Pitzer, labored under a conflict of interest, Neuhausser points out that Randy paid Pitzer's fee for representing Neuhausser at trial, that Pitzer visited Randy numerous times, and that Pitzer represented Randy on the subsequent direct appeal. These facts, Neuhausser contends, created a conflict of interest that adversely affected her case. Neuhausser never directly defines Pitzer's conflict, but she seems to argue that Pitzer's personal financial interest in garnering fees from Randy adversely affected her case. Neuhausser argues that due to the conflict of interest Pitzer did not pursue a trial strategy that would separate Neuhausser from Randy because such a strategy would have required Pitzer to present evidence that was unfavorable to Randy. Specifically, Neuhausser contends that her case was adversely affected by the conflict because Pitzer failed to ask Burgess the necessary foundation questions that would have allowed Pitzer later to introduce impeachment testimony that would have contradicted Burgess's version of the "strip search" incident. Neuhausser also argues that, by choosing not to distance her from Randy, Pitzer shielded Randy from other facts that would tend to convict him, such as his wealth, the antenuptial agreement, and the asserted fact that "all the dealings of the conspirators were with Randall."

Neuhausser has not demonstrated that a conflict of interest "actually affected" the adequacy of her representation. First, it is not clear that she has demonstrated that a real conflict exists based on Randy's payment of Pitzer's fees, because payment of fees by a co-defendant does not, by itself, establish an actual conflict where the co-defendants have separate attorneys. *See Bucuvalas v. United States*, 98 F.3d 652, 656-57 (1st Cir.1996) (cited with favor in *Moss*, 323 F.3d at 463);

*No. 01-4180*
*United States v. Neuhausser*

*Familia-Consoro v. United States*, 160 F.3d 761, 766-67 (1st Cir. 1998) (finding no conflict where defendant did not produce any evidence that paying co-defendant placed limitations on attorney's representation or that co-defendant used threat of non-payment of an outstanding balance to influence attorney's strategic choices).

With respect to the impeachment evidence that was not introduced, it is obvious that the evidence is helpful to Neuhausser because the impeaching witnesses would have testified that Burgess had previously made statements that suggested that Neuhausser was not present for the "strip search." How such evidence would have been harmful to Randy, however, is not as obvious, because in either version Randy was present for the incident. Neuhausser argues that if she was not there to point the gun at Burgess, that fact puts the gun in Randy's hand. Again, however, this does not appear to hurt Randy because whether he held the gun does not change the fact that he was present and participated in the forceful search of a possible informant.

To the extent that it was harmful to Randy's case that he held the gun, Pitzer did not make a choice to keep the gun out of Randy's hand. Pitzer elicited testimony from Agent Stiegelmeyer to the effect that "Randy actually pointed the gun at Mr. Burgess." *See also Abdur'Rahman v. Bell*, 226 F.3d 696, 713-14 (6th Cir. 2000), *cert. dismissed*, 537 U.S. 38 (2002) (finding that petitioner had not demonstrated ineffective assistance of counsel due to conflict where the attorney did not protect the interests of the alleged adverse party). Further, from the record, it does not appear that Pitzer "chose" not to ask Burgess the foundation questions that were necessary for the later introduction of the impeachment testimony. At trial, Pitzer indicated to the court that he did not

*No. 01-4180*
*United States v. Neuhausser*

have the information about the inconsistent statements when Burgess was questioned, although he might have been remiss in that regard. J.A. at 889. At the evidentiary hearing, Pitzer's investigator testified that he provided memoranda to Pitzer that detailed the investigator's interviews with the prospective impeachment witnesses. J.A. at 1252-53. This, however, does not conflict with Pitzer's statement, as Pitzer almost conceded that he was neglectful in not obtaining (or possibly noticing) the possible impeachment testimony. To the extent that Pitzer neglected the information, rather than consciously chose not to present a proper foundation, Neuhausser has not demonstrated an actual conflict with respect to the impeachment evidence.

With respect to Pitzer's failure to separate Neuhausser from Randy by emphasizing (1) that Neuhausser and Randy were divorced, (2) that Neuhausser had no assets, (3) that Neuhausser had signed an antenuptial agreement, and (4) that Randy was wealthy, Neuhausser does not explain how this evidence created a conflict by being harmful to Randy's case. Further, in order to show an actual conflict, the alternative must be plausible. *Moss*, 323 F.3d at 466. The alternative strategy of separation does not appear to be a plausible alternative in this case. Here, Neuhausser had been married to Randy during the conspiracy and continued to live at the Bone Road residence after their divorce. Indeed, the evidence of Neuhausser's financial situation, now alleged as evidence of separation, could have been seen as further reinforcing Neuhausser's dependence on Randy. The district court concluded that the two defendants here "could not be expected to be viewed as separated from each other in the eyes of the jury." J.A. at 187. Accordingly, Neuhausser has failed

*No. 01-4180*
*United States v. Neuhausser*

to show that Pitzer had a conflict of interest that actually affected his representation of Neuhausser, and, therefore, we do not presume prejudice under *Strickland.*

Nor has Neuhausser demonstrated that Pitzer's performance was otherwise constitutionally deficient. Neuhausser mainly relies upon Pitzer's failure to ask the proper predicate questions of Burgess that would have allowed Pitzer to present impeachment testimony from three witnesses.[5]

---

[5]Neuhausser also argues that a number of Pitzer's other errors also constituted ineffective assistance, but those allegations are without merit. First, Neuhausser argues that Pitzer failed to object to the numerous instances of hearsay statements from other alleged conspiracy members, allowing the statements to be used against Neuhausser despite the fact that such statements may only be used against a criminal defendant when the district court has found that the statements were made in the furtherance of the conspiracy and that the defendant and declarant were members of the conspiracy at the time the statements were made. *United States v. Mack*, 159 F.3d 208, 215 (6th Cir.1998). It does not appear, however, that Pitzer's failure to object prejudiced Neuhausser because the district court made the appropriate findings without any objection having been made. *See* J.A. at 829-30.

Second, Neuhausser also asserts that Pitzer failed to continue to object to Burgess's testimony regarding what Neuhausser knew about the contents of packages she accepted on Randy's behalf. While the district court sustained Pitzer's objection to a question concerning what Neuhausser knew, J.A. at 434, it also ruled that Burgess could testify as to what Burgess observed. J.A. at 435-36. Accordingly, when the government asked Burgess whether Neuhausser appeared to know what was in the packages, Pitzer was not ineffective for failing to repeat an objection that had already been overruled. *See id.*

Third, Neuhausser argues that Pitzer's failure to ask certain witnesses to confirm that they had no dealings with Neuhausser and Pitzer's failure to separate Neuhausser's case from Randy's were instances of Pitzer's ineffectiveness. At the evidentiary hearing, Pitzer testified that he made each of these decisions based on his trial strategy. With regard to the separation of Neuhausser and Randy, Pitzer testified that he thought that his decision not to separate Neuhausser's case was based on the fact that in a separated trial, all the attention and evidence would be focused on her, and that by keeping Randy in the trial, attention would be diverted from Neuhausser's actions. This strategy does not appear unreasonable considering that the relationship between Randy and Neuhausser probably significantly lessened the effectiveness of a separation defense. With regard to Pitzer not questioning alleged members of the conspiracy about their lack of dealings with Neuhausser, it appears that Pitzer's strategy was simply to not pursue testimony that did not implicate his client for fear of the answers that might result. *See* J.A. at 1120-22, 1168, 1186. Again, while other lawyers

*No. 01-4180*
*United States v. Neuhausser*

Even if we assume that Pitzer was deficient in failing to lay the proper foundation for the testimony in question, Neuhausser has failed to demonstrate that she was prejudiced by the error.

As noted above, the familiar *Strickland* test requires that a criminal defendant who asserts an ineffective assistance of counsel claim must demonstrate not only that "[Pitzer's] representation fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 687-88, but must also show that "there is a reasonable probability that, but for [Pitzer's] unprofessional error[], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687-88. Where, as here, the alleged ineffectiveness stems from counsel's failure to impeach a government witness, courts generally examine the prejudice that accrued to the defendant by considering (1) the strength of the prosecution's case, (2) the effectiveness of the defense absent the impeachment evidence, and (3) the potential impeachment value of the evidence not introduced. *Stevens v. Hall*, 294 F.3d 210, 218 (1st Cir. 2002); *see United States v. Alsop*, No. 99-3983, 2001 WL 391967, at **4-5 (6th Cir. Apr. 12, 2001) (per curiam) (considering counsel's vigorous cross-examination of government witnesses and defense counsel's other actions in weakening the prosecution's case, in finding no prejudice in counsel's failure to impeach witnesses).

---

may have chosen one path, this does not mean that Pitzer was ineffective in pursing another. *Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997) (noting that ineffectiveness claims should not involve the "'second-guess[ing of] counsel's assistance ..., [as] it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.'"(quoting *Strickland*, 466 U.S. at 689) (alterations in original)).

*No. 01-4180*
*United States v. Neuhausser*

Here, the prosecution's evidence linking Neuhausser to the conspiracy was fairly weak, in that it consisted of: (1) Burgess's testimony about Neuhausser's general presence during certain important events in the conspiracy, J.A. at 401-03, 405, 414, 425, 435-36; (2) the testimony of Burgess and McCarthy that Neuhausser had apparently knowingly accepted payments for drugs on Randy's behalf, J.A. at 204-05, 431-36; (3) Burgess's testimony that Neuhausser had been present at the "strip search" and had held a gun on him, J.A. at 451-53, 502-03; and (4) Agent Stiegelmeyer's testimony regarding Neuhausser's trip to Florida in the white Taurus, J.A. at 615-18, 650-52. Pitzer countered this evidence by focusing on Burgess's testimony. Pitzer called Burgess's testimony into question by a number of methods, including emphasizing (1) Burgess's dislike of Neuhausser (J.A. at 455, 922), going so far as to call another witness to testify that Burgess had said that "he would say whatever he needed to say to get Sheila" (J.A. at 923), and (2) the fact that Burgess was being offered a plea bargain for his testimony (J.A. at 473). Pitzer also specifically impeached Burgess's version of the "strip search" incident by eliciting testimony from Agent Stiegelmeyer that Burgess had previously indicated that Randy, not Neuhausser, had held the gun. J.A. at 797.

Pitzer did the most damage, however, when he browbeat Burgess about a 1998 sworn document, created in order to recover from the DEA the Ford Taurus that had been used in the drug conspiracy. J.A. at 473-78. The document contained statements that directly contradicted Burgess's earlier testimony about the conspiracy, specifically that Burgess did not know or consent to the illegal use of the Taurus. *Compare id.* with J.A. at 438-443. Burgess admitted that he had signed the document, but denied having been sworn prior to signing the document. J.A. at 476-78. Pitzer

*No. 01-4180*
*United States v. Neuhausser*

later called Debra Norvell, a notary, who testified that she had sworn Burgess before he signed the document and that he had signed the document in her presence. J.A. at 916-18. Thus, Pitzer did a thorough job of demonstrating that Burgess would lie under oath, and that here Burgess was motivated to lie because he disliked Neuhausser and he wanted a lesser sentence under his plea bargain.

With regard to the value of the impeachment evidence, the evidence would have helped Neuhausser's case, but it is not clear that it directly contradicted Burgess's statement that Neuhausser was present during the "strip search." From the limited evidence in the record, it appears that three witnesses could have testified to prior statements made by Burgess. Arley Puckett's affidavit states that, although Burgess told him about the "strip search," Burgess "said nothing about Sheila being present." J.A. at 108. Neuhausser also presented an affidavit by Kurt Greber, Neuhausser's investigator, to the effect that Burgess had told him that he had nothing to say that would hurt Neuhausser's case and that Burgess had never mentioned being strip searched by anyone, including Neuhausser. J.A. at 109; *see also* J.A. at 1250-51.[6] Finally, at trial, Pitzer made a proffer to the court regarding the proposed testimony of Hal Ostendorf, who would have testified that Burgess told Ostendorf that Randy had Burgess strip-searched by two other men and never mentioned that

---

[6] Greber also testified that his interviews with other people had led him to understand that Burgess had made statements inconsistent with Neuhausser holding the gun during the strip search. J.A. at 1251-52. To this extent, however, Greber's testimony would seem cumulative on this point considering Agent Stiegelmeyer's testimony at trial. J.A. at 797.

No. 01-4180
United States v. Neuhausser

Neuhausser was present. J.A. at 889. The record, however, is silent with regard to what Burgess would have said had he been given the opportunity to explain these statements.

Given the extent of Pitzer's cross-examination of Burgess, Neuhausser has not demonstrated that there is a reasonable probability that but for Pitzer's error the result of her trial would have been different. *See Alsop*, 2001 WL 391967, at **4-5 (discussing counsel's vigorous cross-examination in finding no prejudice); *Early v. United States*, No. 94-5086, 1994 WL 560969, at **1 (6th Cir. Oct. 11, 1994) ("Counsel's cross-examination of officer Lewis was sufficient to put his credibility before the jury, and thus her failure to impeach him with his suppression hearing testimony did not render her performance ineffective."); *Haislip v. Attorney Gen. of Kansas*, 992 F.2d 1085, 1088 (10th Cir. 1993); *cf. Byrd v. Collins*, 209 F.3d 486, 518-19 (6th Cir. 2000) (finding that, with regard to non-disclosure of impeachment evidence under *Brady*, counsel's thorough impeachment of witness made it "difficult to conclude that there exists a reasonable probability that, had the issue of [the witness's] upcoming parole hearing been disclosed, the outcome in Petitioner's trial would have been different"). Pitzer thoroughly cross-examined Burgess and elicited evidence from another witness that called Burgess's version of the strip search incident into doubt. Further, while the other evidence of Neuhausser's participation was slight, there was evidence that she accepted drug proceeds on Randy's behalf from a witness other than Burgess. Accordingly, Neuhausser has not demonstrated that Pitzer's failure to take the steps to admit the impeachment evidence prejudiced her case.

*No. 01-4180*
*United States v. Neuhausser*

*B. The district court did not commit plain error in admitting evidence regarding Neuhausser's travel to Florida as proof of an overt act in furtherance of the conspiracy.*

Neuhausser contends that the district court erred in admitting evidence regarding her travel to Florida on the grounds that the evidence was both prejudicial and irrelevant. We review the admissibility of that evidence for plain error, as Neuhausser did not make a timely objection to its admission on those grounds, *United States v. Levy*, 904 F.2d 1026, 1030 (6th Cir.1990), and conclude that the district court did not commit plain error in admitting it.[7]

To meet the plain error standard, Neuhausser must establish four elements: (1) there was an error under current law; (2) the error was plain, i.e. clear or obvious; (3) the error affected substantial rights, i.e. it must be prejudicial; and (4) the case warrants the exercise of discretion to "correct a plain forfeited error affecting substantial rights if the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Rogers*, 118 F.3d 466, 471-73 (6th Cir. 1997) (citations and quotations omitted).

Neuhausser argues that the hotel records that showed that Neuhausser had stayed with Randy in Fort Lauderdale, Florida for four days while traveling in a Ford Taurus were inadmissible with

---

[7]Trial counsel did object to the evidence on the grounds that the evidence was discovered based on an improperly obtained warrant, but no objection was made to the evidence on relevancy or undue prejudice. Neuhausser asserted below that the alleged error was preserved by her Rule 29 motion regarding the sufficiency of the evidence with regard to the Travel Act count. This argument, however, seems to confuse a challenge regarding the sufficiency of evidence with respect to one count (the Travel Act count) with a challenge to the admissibility of the evidence with regard to a different count (the conspiracy count).

*No. 01-4180*
*United States v. Neuhausser*

respect to the conspiracy count because the evidence was irrelevant and prejudicial. The argument relies on the fact that, on Neuhausser's direct appeal, this court reversed the Travel Act conviction because the evidence was insufficient to demonstrate that during the trip Neuhausser "attempted to or did in fact promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of . . . cocaine distribution." *Neuhausser*, 241 F.3d at 473. That the evidence in question was insufficient to support a conviction on the Travel Act count, however, does not mean that the evidence is not probative with regard to Neuhausser's involvement in the conspiracy.

Federal Rule of Evidence 402 provides that evidence that is not relevant is not admissible. Fed. R. Evid. 402. Relevance requires only that a piece of evidence make a fact in issue more probable than it would be without the evidence. *See* Fed.R.Evid. 401. Relevant evidence may still be excluded under Federal Rule of Evidence 403 if the court determines that the "probative value [of the evidence] is substantially outweighed by the danger of unfair prejudice." Fed. Rule Evid. 403. A piece of evidence is unfairly prejudicial when it has an undue tendency to influence a jury to make a decision on an improper basis. *United States v. Hathaway*, 798 F.2d 902, 909 (6th Cir.1986).

Under the Travel Act, relevance is tied to, *inter alia*, whether the defendant "attempted to or did in fact promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of a unlawful activity." *See Neuhausser*, 241 F.3d at 473. In contrast, for the conspiracy count, the matter at issue was whether there was an agreement to violate drug laws

*No. 01-4180*
*United States v. Neuhausser*

and whether Neuhausser knew of, intended to join and participated in the conspiracy. *See United States v. Phibbs*, 999 F.2d 1053, 1063 (6th Cir. 1993). The fact that Neuhausser accompanied Randy on a trip to Fort Lauderdale, Florida, which is approximately thirty miles away from the Miami, the city from which Randy obtained cocaine, makes it more probable that Neuhausser knew of, or participated in the furtherance of, an agreement to violate the drug laws than if the fact were not considered. Accordingly, the district court did not plainly err in admitting the evidence.

*IV. Conclusion*

For the reasons stated above, the district court's decision denying Neuhausser's motion filed under 18 U.S.C. § 2255 to vacate, set aside, or correct sentence is AFFIRMED.